# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2541
_____

SHAWN DAVID JACKSON,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Alachua County.
James M. Colaw, Judge.

June 12, 2019


WETHERELL, J.

After a hearing under section 921.1401, Florida Statutes, the appellant, Shawn David Jackson, was resentenced to life in prison for what the trial court described as "an especially heinous, atrocious and cruel murder." On appeal, Jackson argues that (1) the trial court erred by not imposing the burden of proof on the State at the resentencing hearing and (2) a life sentence was not appropriate in this case. We summarily reject the first argument because it is clear from the trial court's sentencing order that the sentence in this case would have been the same irrespective of

which (if either[1]) party had the burden of proof, and we reject the second argument for the reasons that follow.

## *Facts*

In 1989, Jackson brutally raped and murdered a young woman in her home. He was 17 years and two months old at the time. The trial court summarized the crime as follows:

> [Jackson] was living in the same neighborhood as the [victim's] family in High Springs . . . . While it is possible that the victim and [Jackson] may have seen each other before, [Jackson] and others reported that they had had no personal contact until [Jackson] came to the [victim's] residence on [the day before the murder]. On that day, [Jackson] went to the [victim's] residence asking to use the telephone. [Jackson] claimed the phone in his residence was not working. Later investigation revealed that to be untrue. . . . .
>
> [The following day], [Jackson] returned to the [victim's] residence where [she] was home alone caring for [a] 15 month old [child]. [Jackson] once again asked to use the telephone claiming again that the phone at his residence was not working. According to [Jackson], [the victim] allowed him into her home to use the telephone. [Jackson] stated he was nervous and upset when he was unable to reach his friend on the phone. He then stated that [the victim] "flashed" him a smile that he interpreted as mocking him. He described himself as losing all conscious control, entering a psychotic rage, and raping and murdering [the victim] by strangling her to death. [Jackson] stated the victim did not entice him in any way. He reported that he took her smile "really badly" and lunged at her as a result.

---

[1] *See McMillan v. Pennsylvania*, 477 U.S. 79, 91 (1986) ("Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all.").

[Jackson] stated that he grabbed the victim by the throat and she began to struggle. He described the victim coming up off the couch in the living room where she was seated, struggling to get free. [Jackson] was eventually able to subdue her in the hallway of the home where she went down on her back. [Jackson] indicated that the strangulation seemed very long, stating to law enforcement that the "choking part seemed like it took hours." After she went limp, he removed her shorts and underwear, dropped his pants to his knees and began having vaginal sex with her while still possibly choking her. [Jackson] believed he ejaculated and described the sex as brief. After the rape, [Jackson] described the victim as limp and unresponsive with blood coming from her mouth and nose. Some of that blood got on [Jackson]'s hands so after placing the victim's shorts over her to cover part of her body, he went to the kitchen to wash his hands. He then went through the victim's purse which was in the laundry room. He removed cash and car keys. [Jackson] then locked both doors to the [victim's] residence to give him more time to get away and left the victim's body and the 15 month old child inside. He took the victim's [car] and traveled south . . . towards Newberry to obtain gas. Before getting to Newberry, he picked up a friend . . . and told him he had just killed a woman and stolen her car. [The friend] agreed to leave the area and assist [Jackson] in avoiding apprehension.

Jackson was arrested the next day in Virginia driving the victim's stolen car. He told law enforcement that he was planning to go to Maine and that "he couldn't think of any reason why he raped and killed [the victim]."

Jackson was charged with first-degree murder, sexual battery with great force, and several other offenses. He pled guilty to the murder and the sexual battery charges, and in exchange, the State agreed not to seek the death penalty[2] for the murder and nol

---

[2] This was long before the Supreme Court decided in *Roper v. Simmons*, 543 U.S. 551 (2005), that the Eighth Amendment

prossed the other charges. The trial court adjudicated Jackson guilty and sentenced him to life in prison for the murder followed by 15 years in prison for the sexual battery.

In 2016, Jackson filed a rule 3.800(a) motion in which he argued that his life sentence was illegal under *Miller v. Alabama*, 567 U.S. 460 (2012). The trial court granted the motion and held a resentencing hearing pursuant to section 921.1401. After the hearing, the court entered a detailed sentencing order re-imposing the life sentence for the murder with a sentence review after 25 years pursuant to section 921.1402(2)(a), Florida Statutes.[3]

This appeal followed.

### *Analysis*

We review the findings in the trial court's sentencing order to determine whether they are supported by competent substantial evidence, *see Hernandez v. State*, 2018 WL 2224109, at * 3 (Fla. 3d DCA May 16, 2018); *Hadley v. State*, 190 So. 3d 217, 218 (Fla. 4th DCA 2016), and we review the court's ultimate sentencing decision based on these findings for an abuse of discretion. *See Simmons v. State*, 2019 WL 1065396, at *1 (Fla. 1st DCA Mar. 7, 2019) (explaining that the factors in section 921.1401(2) are not elements of the offense but rather are sentencing factors for the court to consider "when exercising its discretion" to impose a life or term-of-years sentence).

In *Miller*, the Supreme Court held that the Eighth Amendment precludes *mandatory* life without parole sentences for juvenile murders, but the Court did not foreclose the possibility that a life sentence could be imposed on a juvenile murderer in appropriate circumstances. *See* 567 U.S. at 465, 479-80. The

---

prohibits the imposition of the death penalty on juvenile murderers.

[3] The court also re-imposed the consecutive 15-year prison sentence for the sexual battery. Jackson does not challenge that sentence on appeal.

4

Court explained that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489.

In response to *Miller*, the Legislature enacted section 921.1401. The statute requires the trial court to "consider factors relevant to the offense and the defendant's youth and attendant circumstances" when determining whether a life sentence is appropriate for a juvenile murderer. § 921.1401(2), Fla. Stat.; *see also* Fla. R. Crim. P. 3.781(c)(1) (requiring the trial court to make specific findings that all relevant factors have been "reviewed and considered"). The statute lists ten non-exclusive factors the court must consider in making its determination, including the nature and circumstances of the offense and the defendant's family background, maturity level, intellectual capacity, mental health issues, and potential for rehabilitation. § 921.1401(2)(a)-(j), Fla. Stat.

Here, although not required to do so,[4] the trial court made detailed findings on each of the factors in section 921.1401(2). Of particular significance, the court found that "this case is unlike any case the community of High Springs ... had experienced before, or since" and that Jackson's actions "reveal something much more than transient immaturity of youth." The court further explained that it was "not convinced that youth, educational limitations, or lack of normal functioning family are at the root cause of the terror, violence, and premeditation exhibited in this case" and that Jackson "is among the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." These findings are supported by competent substantial evidence, and based on the findings, we find no abuse of the trial court's discretion in its determination that a life sentence was appropriate in this case.

We have not overlooked Jackson's argument that because he was eligible for a sentence review hearing at the time of his resentencing hearing, the trial court should have given greater weight to the evidence of his maturity and rehabilitation as

---

[4] *See Dortch v. State*, 2019 WL 639221, at \*3 (Fla. 1st DCA Feb. 15, 2019).

demonstrated by his relatively clean disciplinary record and involvement in self-betterment activities while in prison. We find this argument unpersuasive for several reasons. First, the hearing below was solely a resentencing hearing under section 921.1401, not a sentence review hearing under section 921.1402.[5] Second, it is the responsibility of the trial court (not this court) to determine the weight to be given to the factors in section 921.1401(2). Third, although the defendant's rehabilitation is the sole focus of a sentence review hearing under section 921.1402, it is only one of the many factors that the court is to consider in a sentencing hearing under section 921.1401. Fourth, it is clear from the findings in the sentencing order that the court was not persuaded that Jackson was rehabilitated and fit to reenter society.

## *Conclusion*

For reasons stated above, Jackson's sentence is AFFIRMED.

RAY and WINSOR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and Justin F. Karpf, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Tabitha Herrera, Assistant Attorney General, Tallahassee, for Appellee.

---

[5] If the hearing below had been a sentence review hearing, then Jackson would not be entitled to another one in the future because section 921.1402 provides for only one sentence review hearing for juvenile murderers. *See* § 921.1402(2)(a), Fla. Stat. ("A juvenile offender sentenced under s. 775.082(1)(b)1. is entitled to *a* review of his or her sentence after 25 years.") (emphasis added).