DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHELLE A. HOLLINGSWORTH,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-3705

[April 1, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 502016CF000986AXXXMB.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Paul Patti, III, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges the trial court's order revoking her probation for the crime of aggravated stalking and the sentence imposed. She contends that the court erred in finding her in violation of an oral condition imposed after she violated her original probation, one of two conditions the court found that she violated. We affirm as to the order revoking the probation. Even if an error occurred in finding a violation of one condition, the order could be based on the second more substantial violation, as the court's comments at the hearing make clear that it would have found the violation of either condition sufficient to revoke probation. *Cf. Costanz v. State*, 740 So. 2d 71 (Fla. 4th DCA 1999). As to appellant's sentence, the trial court found pursuant to section 948.06(8)(c)(15), Florida Statutes (2018), that she was a danger to the community. The statute requires mandatory revocation of probation under that finding. Appellant challenges it on grounds that a jury was required to make the finding. We affirm because the Sixth Amendment does not require a jury to make a finding of dangerousness when that finding does not change the range of

punishment authorized by the original jury verdict or plea of guilty. We write to explain this part of our ruling.

Appellant pled guilty to aggravated stalking and was placed on probation. The State filed a petition to revoke her probation because of various violations of probation. In resolving these charges, the court again placed her on probation. When she violated her probation a second time, the court found she had committed substantial violations of the probation.

At the sentencing hearing, after the presentation of evidence, the State argued for the maximum sentence of five years in prison. The prosecutor also noted that under section 948.06(8), appellant was a violent felony offender of special concern, and requested that the court find that she was a danger to the community, as allowed under the statute. The court questioned why such a finding was necessary, because the statute did not provide for a mandatory minimum sentence based upon the finding. The prosecutor thought that the finding would prevent the court from going below the lowest permissible sentence, but the court noted that it could, if there were reasons to depart. The court explained that the statute was more directed at pre-hearing issues, such as the denial of a bond. The prosecutor thought it would make a difference on the scoresheet.

The court proceeded to hear argument, because appellant sought a downward departure sentence. The court then announced its sentence and concluded that it would not downwardly depart. It noted that it had discretion to sentence appellant anywhere between the lowest permissible sentence under the scoresheet to the statutory maximum of five years. The court considered appellant's several violations of probation as well as the severity of the crime for which she was originally convicted. It then revoked appellant's probation and sentenced her to four years in prison with credit for time served; ordered fines to be reduced to a judgment; and ordered DNA swabs to be taken. It then stated that the proceeding was finished but asked whether there was anything else to come before the court. At that point, the prosecutor asked the court to make a finding of dangerousness pursuant to section 948.06(8), as it had previously requested. The court then said, "If you want me to sign an Order finding as such, I will be happy to get it from you." Subsequently, the court signed an order finding that appellant was a danger to the community. Appellant appealed the revocation and sentence.

Once an appeal was filed, appellant's appellate attorney filed a Florida Rule of Criminal Procedure 3.800(b)(2) motion claiming that the finding of dangerousness should have been made by a jury, citing to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99

2

(2013), as well as *Brown v. State*, 260 So. 3d 147 (Fla. 2018). Counsel acknowledged that the argument he was making was contrary to this court's decision in *Souza v. State*, 229 So. 3d 387 (Fla. 4th DCA 2017). In *Souza* we held that *Apprendi* and *Alleyne* did not apply to probation proceedings, as the Sixth Amendment right to trial by jury did not apply. We further held that as probation was an "act of grace," the statute merely prohibited the court from again exercising its discretion to confer that grace but did not change the sentence which could have been imposed as a result of the original findings, whether by plea or jury verdict. *Souza*, 229 So. 3d at 389. In the present case, the trial court was highly critical of appellant's attorney for filing the motion. It believed that a rule 3.800(b)(2) motion was not proper, and that *Souza* was directly on point. Appellant challenges these rulings.

The trial court was wrong in its criticism of appellant's attorney for filing a motion pursuant to rule 3.800(b)(2). This was the proper method to raise the issue of an *Apprendi* violation. *See State v. Fleming*, 61 So. 3d 399 (Fla. 2011) (*Apprendi* claim raised in a rule 3.800(b)(2) motion). In *Bean v. State*, 264 So. 3d 947 (Fla. 4th DCA 2019), we reviewed the appeal of a denial of a rule 3.800(b)(2) motion, in which the defendant argued that the court's assessment of points for victim injury violated *Apprendi* and *Alleyne*. Thus, counsel here properly raised the issue by way of Rule 3.800(b)(2).

In the present case, appellant's attorney acknowledged that he was arguing a position contrary to *Souza*, which was decided by this court in 2017, but was advocating in good faith a change in the law. The attorney was acting in full compliance with his professional responsibility in accordance with the rules of the Florida Bar. Rule 4-3.1, Rules Regulating the Florida Bar, defines the responsibilities of an advocate:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

Appellate counsel acted in good faith and did not deserve the court's criticism. Nevertheless, we do not recede from *Souza,* as we conclude that neither *Brown v. State*, 260 So. 3d 147 (Fla. 2018) nor *U.S. v. Haymond*,

139 S. Ct. 2369 (2019) require that a jury make a finding of dangerousness pursuant to section 948.06(8)(e), Florida Statutes, in order to comply with the Sixth Amendment.

When a defendant is convicted of a criminal offense, either as a result of a plea or jury verdict, the Criminal Punishment Code, section 921.001, Florida Statutes (2018), et seq., governs the sentence. However, a trial court may place a defendant on probation if the defendant is deemed unlikely to reoffend, *see* section 948.01(2), Florida Statutes (2018), or the trial court may provide for a split sentence of incarceration followed by probation. § 948.012(1), Fla. Stat. (2018). In such event, the court will "stay and withhold the imposition of the remainder of sentence imposed upon the defendant and direct that the defendant be placed upon probation[.]"

Upon a violation of probation, section 948.06(8)(e), Florida Statutes requires mandatory revocation of probation for defendants who have committed certain crimes when the court makes a finding that the defendant is a danger to the community. This statute provides:

> (e) If the court, after conducting the hearing required by paragraph (d), determines that a violent felony offender of special concern has committed a violation of probation or community control other than a failure to pay costs, fines, or restitution, the court shall:
>
> 1. Make written findings as to whether or not the violent felony offender of special concern poses a danger to the community . . . .
>
> 2. Decide whether to revoke the probation or community control.
>
> a. If the court has found that a violent felony offender of special concern poses a danger to the community, the court shall revoke probation and shall sentence the offender up to the statutory maximum, or longer if permitted by law.
>
> b. If the court has found that a violent felony offender of special concern does not pose a danger to the community, the court may revoke, modify, or continue the probation or community control or may place the probationer into community control as provided in this section.

Thus, the purpose of the finding of dangerousness is to determine whether the court must revoke probation. In other words, the court cannot continue to suspend the sentence and allow the defendant to remain on probation if the court finds that the defendant is a danger to the community.

In *Souza* we held that section 948.06(8)(e), Florida Statutes, was not an element for sentencing purposes. We said, "The statute simply limits the trial court's discretion on whether or not to again extend this act of grace for certain offenders." It does not create either a mandatory minimum or increase the statutory maximum, because probation merely suspends the sentence which could otherwise be imposed under the Criminal Punishment Code.

Appellant points to *Brown v. State*, 260 So. 3d 147 (Fla. 2018) as requiring us to recede from *Souza*. In *Brown*, a defendant was convicted of third-degree felony petit theft. At sentencing she had fewer than twenty-two scoresheet points. As such, section 775.082(10), Florida Statutes (2018) required that, "the court *must* sentence the offender to a nonstate prison sanction. However, if the court makes written findings that a nonstate prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility . . . ." The trial court found Brown presented "a danger to the public" under section 775.082(10) and gave her a State prison sentence of three years. On appeal, she argued that *Apprendi* prohibited increasing her sentence based upon the judicial fact-finding of danger to the community. A jury was required to make that decision. Although the Fifth District affirmed, the Florida Supreme Court quashed that decision and held that the statute was unconstitutional because it allowed the court, rather than the jury, to find the fact of "dangerousness to the public" which was necessary to increase the statutory maximum nonstate prison sanction.

*Brown* differs from *Souza* and this case, because it did not arise from a probation revocation. More importantly, section 775.082(10) mandated a non-state prison sentence in that case, unless the court made a dangerousness finding, in which case the court could sentence the defendant to any sentence up to the statutory maximum. Thus, the judicial finding would increase the statutory minimum, contrary to the principle of *Alleyne*, which requires any factor which increases the statutory minimum punishment to be found by a jury.

In this case, the danger finding does not increase either the statutory maximum or the statutory minimum. The sentence, both at the time of the plea and the time of revocation, was governed by the Criminal

5

Punishment Code. That section 948.06(8)(e)2.a requires revocation of probation upon a judicial finding of dangerousness only returns the defendant to the position she was at the time of the plea—any sentence which could be imposed pursuant to the Criminal Punishment Code.

*Haymond* also does not change this result. In *Haymond,* a defendant was convicted of a crime which carried a prison term from zero to ten years. After serving a short prison term, he was placed on supervised release. He then violated his conditions of release and the government sought revocation. A federal statute provided that where the *court* finds that the defendant committed an enumerated offense during supervised release, the court must impose an additional prison term of at least five years and up to life in prison. As a consequence, instead of a prison term with a minimum of zero years, the court's finding increased the minimum term to five years. A plurality of the Supreme Court held that a jury must make findings increasing the minimum mandatory punishment, thus applying *Alleyne* to supervised release, something the dissenters would not have allowed. However, the Supreme Court's decision was narrow:

> As at the initial sentencing hearing, that does not mean a jury must find every fact in a revocation hearing that may affect the judge's exercise of discretion within the range of punishments authorized by the jury's verdict. But it does mean that a jury must find any facts that trigger a *new* mandatory minimum prison term.

*Haymond,* 139 S. Ct. at 2380 (footnotes omitted).

In contrast, section 948.06(8)(e) does not change the range of punishments under the Criminal Punishment Code. It merely prevents the judge from deviating from the Code by again imposing probation. This does not violate the principles of *Alleyne* or *Haymond.*

The trial court thought that the statute did not apply to its sentencing decision, because the court was revoking probation based upon appellant's string of violations. In fact, the court did not make a finding of danger to the community in sentencing. It was only after the court had completed pronouncing the sentence that the State asked the court to rule that appellant was a danger to the community in accordance with the statute.

The after-the-fact finding of dangerousness did not change the sentencing range. It did not increase the statutory minimum or maximum. It did not prevent the trial court from downwardly departing from the

6

lowest permissible sentence, had the court made the necessary findings. The fact that a jury did not make the findings of dangerousness did not violate the defendant's Sixth Amendment rights nor did it violate *Apprendi* or *Alleyne*.

For the foregoing reasons, we affirm the order of revocation and sentence.

FORST, J., and WALSH, LISA A., Associate Judge, concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***